UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| GARGANUS MOORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:23-cv-00047-JRS-MJD |
| ) | |
| RANDY VANVLEET, *et al.*, ) | |
| Defendants. ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Garganus Moore filed this lawsuit under 42 U.S.C. § 1983 alleging that Defendants failed to protect him from an attack by another inmate and retaliated against him for protected First Amendment activity.

Defendants have moved for summary judgment. Dkt. [92]. For the reasons below, that motion is **GRANTED**.

**I.
Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need

not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Moore and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

### A. The Parties

At all relevant times, Mr. Moore was an inmate incarcerated with the Indiana Department of Correction ("IDOC"). *See* dkt. 2.

Defendant Randall Vanvleet is the Lead Investigator with the office of Investigation and Intelligence ("OII") at Wabash Valley Correctional Institution ("Wabash Valley"). Dkt. 32 at 1; dkt. 93-4 at 1.

Defendant Matthew Leohr is a Classification Specialist at Wabash Valley. Dkt. 32 at 2; dkt. 93-4 at 2.

Defendant Scott Fischer was at all relevant times a correctional lieutenant at Wabash Valley. Dkt. 32 at 2.

### B. Mr. Moore's Protective Custody Requests

Mr. Moore was attacked by a member of the Latin Folk gang while housed at Wabash valley in 2015. Dkt. 93-1 at 11. Because Mr. Moore was on the gang's hit list, he was placed in administrative protective custody at another facility. *Id.* at 14. In 2018, Mr. Moore was transferred to Westville Correctional Facility, and did not request protective custody while there. *Id.* at 18–19. On July 19, 2019, Mr. Moore was transferred back to Wabash Valley and filled out paperwork requesting protective custody, which was denied and not at issue here. *Id.* at 19–20. In early 2020, Mr. Moore got into a fight with his cellmate, who was a member of the Black Disciples gang. *Id.* at 25–26. When Mr. Moore was placed in another housing unit, his new cellmate with gang affiliation pulled a knife on him, resulting in Mr. Moore's placement in the restricted housing unit pending transfer. *Id.* at 27–29.

After returning to Wabash Valley, Mr. Moore submitted three protective custody requests at issue in this matter. The first was dated December 29, 2020, the second was dated January 6, 2021, and the third was dated January 11, 2021. Dkt. 93-4 at 2; dkt. 59-1 at 51. After his investigation, Mr. Vanvleet concluded that Mr. Moore did not provide any evidence of an ongoing threat to his life and found the protective custody requests unsubstantiated. *Id.* Wabash Valley does not have a protective custody unit. Dkt. 93-4 at 1. Inmates granted protective custody are placed in restricted housing at Wabash Valley until they can be transferred to a facility that has a protective custody unit. *Id.* After Mr. Vanvleet discussed Mr. Moore's request with Mr. Leohr, the two recommended transfer to New Castle Correctional Facility. *Id.* at 2.

### C. Mr. Moore's Transfers and Subsequent Attack

3

From April 27 until May 6, 2021, Mr. Moore was in Wayne County Court Jail for a proceeding. Dkt. 93-3 at 8. On May 20, 2021, Mr. Moore was transferred to New Castle Correctional Facility Annex, and on June 28, 2022, Mr. Moore returned to Wabash Valley. *Id.* at 6, 8. While at New Castle, threats were made against Mr. Moore, and he was placed into protective custody. Dkt. 93-1 at 35–37.

On October 31, 2022, an inmate attacked Mr. Moore in his cell. Dkt. 93-1 at 41–43. Wabash Valley preserved a video of the incident from five separate angles. Dkt. 81; dkt. 93-6. Mr. Moore filed a grievance regarding the incident to which Lt. Fischer responded. Lt. Fischer provided an inaccurate description of the attack in his response. Dkt. 94 at 13. Mr. Moore states that Lt. Fischer also failed to provide video footage of the attack, which caused other officers to fail to protect Mr. Moore. Dkt. 23 at 3.

Mr. Vanvleet reviewed the video and confirmed that the attack happened as described by Mr. Moore. Dkt. 93-4 at 3. After he again filed a request for protection, Mr. Moore was placed into restricted housing at Wabash Valley on November 3, 2022, pending transfer to a facility with a protective custody unit. Dkt. 59-1 at 1; dkt. 93-3 at 5–6. On February 8, 2023, Mr. Moore was transferred to the Indiana State Prison to be placed in protective custody. Dkt. 59-1 at 1–2; dkt. 93-3 at 5.

## III.
## Discussion

Mr. Moore raises an Eighth Amendment failure-to-protect claim against Mr. Loehr and Mr. Vanvleet and a First Amendment retaliation claim against Lt. Fischer.

### A. Eighth Amendment Failure-to-Protect Claim

Prison officials have a duty to protect inmates from violent assaults by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To prevail on a failure to protect claim, the plaintiff

4

must prove (1) that he was at a substantial risk of serious harm that ultimately occurred, and (2) that the defendant was subjectively aware that the plaintiff was at a substantial risk of harm and failed to make reasonable efforts to protect the plaintiff from this substantial risk. *Id.* at 832−34; *see also Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007) (noting a defendant incurs liability for the breach of the duty to protect when he was "aware of a substantial risk of serious injury to [an inmate] but nevertheless failed to take appropriate steps to protect him from a known danger." (quoting *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002)).

Certainly, Mr. Moore's repeated altercations with members of different gangs subjected him to a risk of harm. This case depends on the subjective prong of the deliberate indifference analysis: whether defendants were aware of this risk and failed to take appropriate steps to protect him when making the classification and transfer decisions.

With respect to Mr. Leohr, there is no evidence that he personally investigated the matter. Dkt. 93-4 at 2. Instead, the undisputed evidence shows that his knowledge was limited to the investigation results that Mr. Moore shared with him. *Id.* Because Mr. Vanvleet's investigation indicated that he found no evidence of a specific threat, it cannot be said that Mr. Leohr had any knowledge of a specific threat against Mr. Moore. *Id.* Moreover, even had he been aware of a specific threat, there is no evidence in the record from which a reasonable jury could infer that he was deliberately indifferent to the threat against Mr. Moore. Rather, the evidence in the record indicates Mr. Leohr recommended transfer to another facility. *Id*; dkt 93-5. Mr. Moore argues that Mr. Leohr was deliberately indifferent because he endorsed transfer to another facility, rather than protective custody. Dkt. 93-1 at 30–31. Wabash Valley, however, does not have a protective custody unit. Dkt. 93-4 at 1; *see* dkt. 93-1 at 14. Even if Wabash Valley did have a protective custody unit, that is not to say that undertaking a different means of protection constituted a

constitutional violation in any event. There is no evidence in the record from which a jury could infer that Mr. Leohr ignored or was otherwise deliberately indifferent to any particular threat against Mr. Moore when Mr. Leohr signed the transfer paperwork. *Farmer*, 511 U.S. at 832-834.

With respect to Mr. Vanvleet, however, there is a disputed question of fact regarding his subjective knowledge of a particular threat against Mr. Moore in 2021. Although Mr. Vanvleet states that Mr. Moore provided no specific information about the threat, Mr. Moore testified that he confirmed to facility investigators confidential information they already had about different gangs that might be threatening him. Dkt. 93-1 at 23–24. Nevertheless, although there is a question of material fact about Mr. Vanvleet's subjective knowledge of a threat against Mr. Moore, there is no evidence that his conduct with respect to the threat was deliberately indifferent. Instead, in light of the lack of a protective custody unit at Wabash Valley, Mr. Vanvleet took action, recommending transfer out of the facility. Dkt. 93-4 at 1; dkt. 93-5. With respect to knowledge of a particular threat against Mr. Moore in 2022, after his return from New Castle, there is no information in the record that Mr. Vanvleet had any knowledge of a specific threat or a renewed request for protective custody. Dkt. 93-1 at 37–39. Rather, Mr. Moore testified that he did not tell Mr. Vanvleet about the specific threat Mr. Moore received. *Id.* at 40–41. So Mr. Vanvleet took appropriate action to protect Mr. Moore when presented with facts calling for such protective action.

For these reasons, Defendants Loehr and Vanvleet are entitled to summary judgment.

### B. First Amendment Retaliation Claim

To succeed on a First Amendment retaliation claim, a plaintiff must come forward with evidence sufficient to allow a reasonable jury to conclude that: (1) the plaintiff engaged in protected First Amendment activity; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was a motivating factor in the defendants'

decision to take the allegedly retaliatory action. *Taylor v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022).

Although Lt. Fischer argues that Mr. Moore was not engaged in protected First Amendment activity in 2022, it is not disputed that he filed a grievance against Lt. Fischer six years prior, which is constitutionally protected First Amendment Activity. Dkt. 94 at 12. Six years, however, is too remote to support the inference of a retaliatory motive. *See Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016) (two years is too remote); *see also Castellanos v. Ramage*, No. 18-CV-1024-SMY, 2018 WL 3094106, at *3 (S.D. Ill. June 22, 2018) (one year after grievance is too remote).

Even so, with respect to injury, there is no evidence in the record from which a jury could infer that Lt. Fischer withheld or "failed to provide" the video footage of the October 2022 attack. The undisputed evidence shows that the video was preserved and that it corroborated Mr. Moore's account. Dkt. 93-4 at 12. Lt. Fischer, however, does not dispute claims that his description of what took place during the October 2022 attack was not corroborated by the video. Dkt. 94 at 13.

Whether allegedly retaliatory conduct would "deter a person of ordinary firmness" from exercising his First Amendment rights is an objective test, *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020), and the standard "does not hinge on the personal experience of the plaintiff," *Holleman v. Zatecky*, 951 F.3d 873, 880 (7th Cir. 2020). "Whether retaliatory conduct is sufficiently severe to deter is generally a question of fact, but when the asserted injury is truly minimal, we can resolve the issue as a matter of law." *Douglas*, 964 F.3d at 647.

Mr. Moore's injury was too minor to deter an inmate of ordinary firmness from engaging in First Amendment activity. No inmate of ordinary firmness would be deterred by an officer's inaccurate description of a jailhouse attack when the inmate's account was then vindicated by the same prison's authorities and the inmate received his requested protective custody. Absent more,

7

the facts do not support an inference that Mr. Moore's injury was anything other than "truly minimal." *Id*. Moreover, the proposition that an inmate of ordinary firmness would be deterred by the possibility that a correction officer might be in a position to provide a factually incorrect version of jailhouse conduct that could lead to unspecified consequences is simply too tenuous when he has suffered no actual injury.

Mr. Moore received protective custody after the attack, and prison officials corroborated his account of what took place. Dkt. 59-1 at 1; dkt. 93-3 at 5–6; dkt. 93-4 at 3. Mr. Moore "needed to point to a deprivation with some significant deterrent effect in the prison context," *Douglas*, 964 F.3d at 647–48, but he has not done so. Given Mr. Moore's ability to get redress for Lt. Fischer's inaccurate account and protective custody from his attacker, he has failed to show a deprivation that would likely chill future First Amendment activity of one of ordinary firmness. Accordingly, for these reasons, Lt. Fischer is entitled to summary judgment.

## IV.
## Conclusion

For the reasons explained above, Defendants' motion for summary judgment is **GRANTED**. Dkt. [92]. Final judgment will issue in a separate entry.

Approximately four months after filing his response to defendants' motion for summary judgment, Mr. Moore filed two motions for assistance in recruiting counsel. Dkts. [109] and [112]. Because defendants are entitled to summary judgment, Mr. Moore's motions, dkts. [109] and [112], are **denied as moot**.

**IT IS SO ORDERED.**

Date: 9/2/2025

JAMES R. SWEENEY II, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution:

GARGANUS MOORE
170307
PLAINFIELD - CF
PLAINFIELD CORRECTIONAL FACILITY
Inmate Mail/Parcels
727 MOON ROAD
PLAINFIELD, IN 46168

All electronically registered counsel of record